# Charleston.

## SMITH et al v. HENNING.

(Absent, JOHNSON, JUDGE).

Decided May 1, 1877.

1877.
January Term.

1. In an action of ejectment, and at the trial thereof, in the county of Greenbrier, brought by Agnes M. Smith et al. v. Thomas A. Henning, it was admitted by the parties that the land in the declaration mentioned is situate in the county of Greenbrier, West Virginia, and was in the possession of, and owned in fee by the late William Smith at the time of his death ; that the said land is now, and was at the commencement of this suit, in the possession of, and claimed by, the defendant, and that it is the same land that is mentioned and described in the deed from John W. Jones, executor, &c., to the defendant hereinafter mentioned, under which the defendant claims title ; and it was proved that William Smith, the testator, died on the —— day of July, 1863, at the residence of his son-in-law, John W. Jones, in the county of Bedford, in the state of Virginia, where he was staying as a refugee; that he had gone from his home in Lewisburg, in the year 1862, and had taken with him his slaves, horses, wagon, carriage and some other property, to the county of Bedford; that the dwelling house of said Smith, at the time of his death, was in the county of Greenbrier, where he had resided for more than twenty years, and had declared his intention to return to it as soon as the war was over; and all the real estate owned by him at the time of his death lies in Greenbrier and Nicholas counties, in the state of West Virginia; that the plaintiff, Agnes M. Smith, is the widow of said William Smith, and the plaintiffs, Sarah R. Duffy and Elizabeth J. L. Jones, are the daughters, and Francis B. Smith the son, and only heirs of the said William Smith. And thereupon the defendant offered in evidence to the jury a certified copy of a paper pur-

porting to be the last will of said William Smith, deceased, with the certificate of probate thereon from the county court of Bedford county, Virginia, a copy of the qualification of John W. Jones, as executor of said will, in said county, and the order admitting said will and certificate to record by the circuit court of Greenbrier county, which said copies and order are as follows:

"I, William Smith, being of sound mind and disposing memory, do make this my last will and testament: I will and bequeath to my wife, Agnes M. Smith, and my two daughters, Elizabeth J. L. Jones and Sarah R. Duffy (John W. Jones acting by my appointment as trustee for Sarah R. Duffy), all my property of every description, both real and personal, including bonds, moneys, accounts, &c., (excepting my library and Nicholas land, which will be disposed of hereafter). After the payment of all my just debts, my property of every description (with the above-named exceptions), I direct to be equally divided amongst my wife, Agnes M. Smith, and my two daughters, E. J. L. Jones and S. R. Duffy, under the following restrictions, to-wit: After the death of my wife, Agnes M. Smith, I direct that her proportion of my estate shall revert to my two daughters, E. J. L. Jones and S. R. Duffy. Should my daughter, S. R. Duffy, die before my wife, intestate and without issue, then the whole of my wife's proportion of my estate shall revert to my daughter, E. J. L Jones, and in the event of her death, to her children. John W. Jones, of Bedford county, whom I hereby appoint and constitute a trustee for my daughter, S. R. Duffy, shall hold all the property and effects derived from my estate, to which she shall be entitled by this, my will, for her separate use and benefit, free from the debts, liabilities or control, in any manner, of her husband, Philip Duffy. I further direct that S. R. Duffy's proportion of my real estate be sold as soon after my death as may be, if she desire it, and that the proceeds be held by said trustee for her separate use as aforesaid, subject to any disposition she may think proper to make of them. I will and bequeath to my daughter, E. J. L. Jones, my entire library, consisting of books of every description. I will and bequeath to my son, Francis B. Smith, and his children, my tract of land in the county of Nicholas; should said Francis B. Smith, however, die before either of my daughters, or without children, then this Nicholas land shall revert to my two above-named daughters. Whosoever of said parties to this will, that shall attempt to change or break said instrument in any manner, shall forfeit all claim or claims to their specified proportion of my estate. Lastly, I do hereby appoint and constitute my son-in-law, John W. Jones, my executor, to sell

and convey any real estate that I may have, and to do any and all acts proper for an executor.

"Signed this 27th day of June, 1863.

"WM. SMITH.

"W. A. LONDON,
"F. M. HAWKINS."

"At a court of quarterly sessions, begun and held for Bedford county, at the court house, on Monday, the 27th day of July, 1863, the last will and testament of Wm. Smith, deceased, was produced in court, proved according to law by the oaths of W. A. London and F. M. Hawkins, the subscribing witnesses thereto, and ordered to be recorded. And on the motion of John W. Jones, the executor named in the will, who made oath thereto, and together with Thomas M. Jones and Ro. C. Jones, his securities, entered into and acknowledged a bond in the penalty of $20,000, conditioned according to law; certificate was granted him to obtain probate of said will in due form. And the said bond was ordered to be recorded.
"Teste:

"A. A. ARTHUR, C. B. C."

"*State of Virginia, Bedford county, to-wit:*

"I, Robert S. Quarles, clerk of the county court of the county and state aforesaid, do certify that the forgoing paper signed by Wm. Smith, is a true copy of the original will of Wm. Smith, deceased, which will is on file in the clerk's office of said court, and that the order following, admitting said will to probate, is a true transcript from the records of said court.

"Given under my hand and the seal of said court, this, the 20th day of June, A. D. 1874, in the 98th year of the commonwealth.

"ROBT. S. QUARLES.

[Court Seal].

ORDER.

"At a circuit court held for Greenbrier county, at the court house thereof, on Monday, June 14, 1875, this day came the parties, by their attorneys, and the plaintiffs, Sam'l Gilkeson, Thos. A. Henning and others, moved the court to admit a paper, purporting to be a certified copy of the will of William Smith, deceased, from the county court of Bedford county, Virginia, to record in this court; and the court, after hearing the evidence and argument of counsel, is of opinion that the said paper should be admitted to record, and have the same effect, both as a will of real and personal estate, as the original would have if admitted to record. It is, therefore, considered by the court that said copy be recorded in this court as a

will of real and personal estate, and that the plaintiffs recover their costs of the defendant."

MEMO.—"On the trial of this motion the defendants took a bill of exceptions to the rulings and judgment of the court, which is signed, sealed and made a part of the record in this cause."

The plaintiffs objected to the admission of said copies and order to the jury as evidence, but the objection was overruled and said copies and order allowed to go to the jury as evidence. HELD:

Under the circumstances and for the reasons stated in the opinion of the Court in this case:

I. That the circuit court did not err in admitting as evidence to the jury said certified copy of said paper purporting to be the last will of said William Smith, deceased, with the certificate of probate thereon, from the county court of Bedford county, Virginia, and also the said copy of the order of qualification of John W. Jones, as executor of said will, in said county court, and also the order admitting said will and certificate to record by the circuit court of Greenbrier county.

II. That the validity of the said orders of said county court of Bedford, cannot be called in question in the trial of this cause.

III. That the acts of the said executor done in the county of Greenbrier, during the late war between the government of the United States, and the confederate states, while the said counties of Bedford and Greenbrier were under and subject to the jurisdiction, authority and control of the government of Virginia, at Richmond, under and in accordance with the law of Virginia then in force, are ordinarily good and valid, although said will was not admitted to probate in the county of Greenbrier, and said Jones had not qualified and given bond as executor of said will in the county of Greenbrier, or in this state.

2. The last clause contained in said will, authorizing the executor to sell land, confers a simple power, and not a power coupled with an interest.

3. The said will passed the legal title in the land in controversy to the devisees.

4. The said simple power to sell land of the testator conferred by said last will, was for the purpose and intent of payment of debts of the testator, and for no other purpose. It is a qualified power.

1877.
January Term.

Smith *et al.*
v.
Henning.

5. If an executor under color of said power, sells land to raise money to be applied to purposes other than the payment of debts of the testator and the purchaser had notice thereof, the sale and purchase thereof, and the deed from the executor to the purchaser for such land made in pursuance of said sale, must ordinarily be considered as unauthorized by said last clause of said will, and also, at least, constructively fraudulent as to devisees, and does not divest the devisees of their legal title to said land.

6. In making a deed in execution of, or in pursuance of a power, it is not always necessary to recite therein the *power*, but it is the better and safer practice to do so.  A case where it is unnecessary to recite the power.  See opinion of the Court.

7. If a person in good faith, purchases land of an executor, who is authorized by the will, to sell the land for the payment of debts, he is not bound ordinarily, (though he may be in some cases) to inquire if there in fact be such debts, or the purpose for which the land is being sold, and if he be a *bona fide* purchaser, and pay for and receive a proper deed for the same without notice or knowledge, that the land was in fact sold for a purpose not authorized by the clause or clauses of the will conferring the authority upon the executor to sell, then the sale and deed to the purchaser does ordinarily (though perhaps not universally), divest the legal title from the devisee and passes it to such purchaser.

8. A case in which a paper writing, purporting to convey land, is held to be a deed, though no reference is made to a seal in the body of the writing. but at the end of the name of the vendor signed to such writing, is a scroll, and within the scroll is written "seal," and the writing which in the first part says "this indenture" and purports to "*grant*" lands, and is acknowledged before the clerk of the proper county for record as a deed, and admitted to record by the clerk as a deed.  See opinion of Court.

A writ of error with *supersedeas*, to a judgment of the circuit court of the county of Greenbrier, entered on the 17th day of June, 1875, in an action of ejectment, then pending in said court, wherein Agnes M. Smith, Sarah R. Duffy and others, were plaintiffs, and Thomas A. Henning, was defendant.

The writ of error was allowed upon the petition of the plaintiffs.

HAYMOND, JUDGE, who delivered the opinion of the Court, states the case sufficiently.

The Hon. Homer A. Holt, Judge of the eighth judicial circuit, presided at the trial below.

*A. C. Snyder* and *Mathews & Mathews,*for plaintiffs below and plaintiffs in error.

*First*—The court erred in admitting, as evidence, the paper purporting to be a copy of the will of William Smith, deceased, because :

1. The domicil of the testator and all the real estate owned by him at the time of his death, being in the county of Greenbrier, the county court of Bedford had no jurisdiction to admit the original will to probate. *Ex parte* Barker, 2 Leigh, 719. Consequently a copy from said county court could not, *if resisted,* be legally admitted to record in Greenbrier. *Pollard v. Lively,* 2 Gratt., 216. This view is not in conflict with the cases of *Fisher v. Bassett,* 9 Leigh, 119, and *Burnly v. Duke,* 2 Rob. R., 102. In these latter cases the court *held* the probate good in a collateral proceeding, but conceded that the probate would have been avoided in a direct proceeding.

2. The laws of this state do not authorize the circuit court to admit a *copy of will* to probate. By §2, 5 and 6, ch. 118 Code, p. 587–8, the power to admit to probate authenticated copies of wills was conferred upon the recorder. The manner of proving such copies and their effect are also provided for in said sections. The office of recorder does not now exist. Certain powers conferred upon that officer by the Code, are by ch. 14, acts 1872–3, given the clerk of the county court. By §3, ch. 13, *id.* acts, p. 35, jurisdiction in matters of probate is given to the county court. Section 1, ch. 178, *id.* acts, p. 529, the clerk of the county county has "power to admit wills, &c.," to record. By ch. 137, *id.* acts p. 456, the circuit courts are given "concurrent jurisdiction with the

76

county courts in all matters of *probate of wills*, &c. And by §3, ch. 15 *id.* acts, p. 43, the circuit court has appellate jurisdiction in controversies, respecting "*the probate of wills.*" These are all the statutes we have on the subject, and a careful examination of them will show that the Legislature has studiously avoided making any provision for the probate of copies of wills, such as was by ch. 118 of the Code, conferred upon the recorder. It is true that ch. 118 has not been in terms repealed, but the court cannot, by constructions, substitute the words "circuit court" for the word "recorder," because such a substitution is prohibited even to the Legislature, by sec. 30, art. 6 of the Constitution, *a fortiori* are the courts probibited. In ch. 222, acts 1872–3, p. 650, sec. 30 of ch. 77 of the Code, p. 483, is re-enacted and provides that, "every will or authenticated copy thereof, *admitted to probate under the provisions of this chapter*, shall be recorded, &c." But when we examine this chapter, we can find no provision in it for admitting copies to record; consequently, the statute is incongruous and does not confer the power to admit copies to record.

3. The copy from the county court of Bedford county could not be admitted as evidence as a *will of real estate*, because it does not *appear from said copy* that the will was proved in the Bedford court to have been so executed as to be a valid will of lands in this State. Code, p. 588, ch. 118, §5; *Povall's case*, 3 Leigh, 816; *Todd's case, id.* 819; *Williams v. Saunders*, 5 Cold. (Tenn.) 60.

*Second.*—The deed from John W. Jones, to the defendant was improperly allowed to go to the jury as evidence of title:

1. Jones having qualified as executor in Virginia, after the formation of this State, he was a foreign executor and as such he had no authority in this State. 1 Rob. (new) Pr., 161–3; *Dorsey v. Dorsey*, 5 J. J. Marsh., 280; *Williams v. Storrs*, 6 Johns., Ch. 353; *Kerr v. Moon*, 9 Wheat., 565; *Harper v. Butler*, 2 Pet., 239. In the case of *Fenwick v. Sears*, 1 Cranch, 258, the Supreme

Court held that an administrator who had qualified in the State of Maryland before the separation of the District of Columbia, could not, after the separation, maintain an action in that part of the District ceded by Maryland, by virtue of that qualification. A sale of lands made by a foreign executor is void. 1 Rob. (new) Pr., 161.

2. The said deed is not under seal and does not purport to convey the title of the testator in said lands—no power being recited in the deed, it could pass nothing but the personal interest of the grantor. A deed by an executor to convey land must show on its face with certainty that the act done is clearly in pursuance of authority as executor. *Lockwood v. Sturdevant,* 6 Conn., 373. A conveyance not under seal is invalid in this State. *Pratt v. Clemens,* 4 W. Va., 443 and 7 W. Va., 437.

3. An executor cannot trade or barter land under a power to sell—he can sell for money and nothing else— *Taylor v. Galloway,* 1 Ohio, 232. The consideration of this deed and sale was not money. It was Confederate Treasury notes—an almost worthless commodity. The deed is, therefore, void and the sale fraudulent. The defendant, being a party to this corrupt agreement, cannot set up this deed against the appellants who are not parties to said fraudulent sale and corrupt agreement.

4. The court erred in refusing the instruction asked for by the plaintiffs. The matters involved in the first and third instructions have already been considered; the second will now be considered.

The will did not authorize the executor to sell the lands, except such sale became necessary for the payment of debts. This sale was not made for the payment of debts, and the defendants had notice of that fact. The certificate of facts show—record, p. 15—that the executor stated at the sale that the "land was being sold in order that the proceeds arising from the sale might be invested in Bedford county, Virginia, for the benefit of the devisees under will, &c. The testator, having devised

all his "property of every description, both real and personal," and not the *proceeds* arising from a sale of said property, to his wife and daughters, the executor hád no power, as such, to sell. The whole will must be construed together and effect given to each clause so far as it can be done. Applying this general rule, the last sentence of the will in which the testator, says: "I do hereby appoint and constitute may son-in-law, John W. Jones, my executor, to sell and convey any real estate I may have, and to do any and all acts proper for an executor," must be limited by the devisee in the first clause of the will. It will then read : I do hereby appoint John W. Jones, my executor with power to do all acts proper for an executor, including the power to sell and convey my real estate, should it become necessary to do so in the due administration of my estate. A sale could only become necessary under this will in the event the real estate should be required to pay the debts of the testator; or the executor, as trustee for Sarah Duffy, might have sold her portion of the real estate if she had so desired ; but neither the proof in this cause, nor the deed show that the sale was made, either to pay debts or as trustee for Mrs. Duffy. The contrary is shown in both instances. Where an executor does not strictly pursue the authority under which he acts in making a sale of lands, the sale is void. *Wiley v. White,* 3 Stew. & P. (Ala.) 355; *Lockwood v. Sturdevant,* 6 Conn., 373; *Pendleton v. Fay,* 2 Paige, 202. The following cases are very similar to the one at bar, and the sales by the executors were held to be without authority and void: *Martin v. Martin,* 43 Barb., 172; *Mapes v. Tyler,* 43 Barb., 421.

Where one purchases land of an executor, as such, he is bound to know whether he is authorized to sell the lands or not, and the rule *caveat emptor* applies to all such sales. *Brush v Ware,* 15 Pet., 93 ; *Brock v. Phillips,* 2 Wash., 68; *Snider v. Snider,* 3 W. Va., 200 ; *Jackson v. Ligon,* 5 Leigh., 161 ; 2 Spence's Eq. Jurisp., 384, 88.

That the plaintiff, Agnes M. Smith, was present at the

sale, cannot, in this action, affect her, because in an action of ejectment, the defendant cannot set up an estoppel, *Swich v. Sears*, 1 Hill 17. And in no event can her consent, if it had been given to the sale, affect the recovery of the other plaintiffs.

The defendant, however, claimed in the court below that by the act of the Legislature of this State, passed March 31, 1873—acts 1872-3, p. 168-9, the acts of John W. Jones, as executor, were validated and confirmed, and that the sale made by him of the lands involved in this action are made as valid in all respects as if said Jones had qualified as executor in this State before the sale.

In reply to this view we say : First, that said statute has no effect upon this action, because it contains a *proviso*, which expressly excepts from its operation, all acts therein declared valid as against any person aggrieved, who shall within two years from the passage of said act, apply to have the same corrected, set aside or annulled by proper proceedings. This action was pending when said act was passed, consequently it was not intended to operate upon it. In no case will a court give a statute a retrospective operation unless the statute plainly so declares.

This proviso, however, contains nothing more than the courts would declare in the construction of such a statute.

In the case of *Merwin v. Ballard*, 66 N. C., 398; it was held that an act of the Legislature passed after an action has been commenced, can have no application to or effect upon such action, and the same must be tried according to the law existing at the institution of the suit.

A sale and conveyance made by a foreign executor being void, not by reason of any statute, but under the general principles of law, no valid statute can be passed giving such a sale and conveyance force and effect. In some cases it has been held that where certain acts or contracts are made void by statute, such as usurious con-

tracts, the Legislature may repeal the statutes rendering such contracts void and make the repeal operate to validate existing contracts—*Danville v. Pace*, 25 Gratt., 1. But it is believed that no case can be found in which it has been held that an act or contract absolutely void under the common law, can, by a retrospective act of the Legislature, be made valid. Opinion of Joynes Judge, in *Griffin v. Cunningham*, 20 Gratt. 109, 10, and the cases there cited.

In the case of *Wilkinson v. Leland*, 2 Pet., 627, a retrospective legislative act of the Legislature of Rhode Island confirming and validating a sale of land made by a foreign executor, was sustained by the Supreme Court of the United States. But the court placed its decision in this case upon the ground that the sale was made for the payment of debts, and as the creditors were not complaining, the heirs who sought to set the sale aside, being mere trustees of an insolvent estate, had no rights which could be divested by the sale. It also appears in that case that the state of Rhode Island had no constitution. And in other cases of the same class it is held by the supreme court that the Constitution of the United States does not prohibit the states from passing unjust or retrospective laws, nor does it prohibit the states from passing judicial statutes or laws divesting vested rights. *Satterlee v. Matthewson*, 2 Pet., 413-14; *Watson v. Mercer*, 8 Pet., 88 and 110.

The sale in this case cannot be made valid by the statute so as to bind the plaintiffs in this action who are not parties to the contract, whatever might be the effect upon Jones and the defendant who made the contract.

But how can such a statute be enforced in this case—Jones, as executor, when he qualified in Bedford county, Va., and gave sureties. They are only bound for his acts as the law then was and in the state of Virginia. 1 Rob. (new) Pr. 163; *Fletcher v. Sanders*, 7 Dana, 351; *Governor v. Williams*, 3 Iredell, 152. If this sale in this state is made valid, then as to the proceeds of the

sale of this land, the executor holds them without being liable on his bond as executor. Such cannot be good law.

*Samuel Price* and *R. F. Dennis*, for defendants below and defendants in error.

The plaintiffs have appealed to this Court, and have assigned several grounds of error:

1. Had not the county court of Bedford jurisdiction to hear and grant the probate of Mr. Smith's will?

Where the court acting has a general jurisdiction over the subject mattter before it, as for instance the county court of Bedford, to grant probate of this will, the party objecting must show the want of jurisdiction, as everything will be presumed in favor of a judgment most necessary for its validity until the contrary is shown.

The testator had resided there for more than a year, died there, and had his property there. The county or corporation has jurisdiction wherein the decedent has a mansion house, *or known place of residence,* (he had resided in that county for more than a year), if he has no such house, *or place of residence* therein, a county or corporation wherein any real estate lies that is devised or owned by the decedent; if there be no such real estate therein the county or corporation *wherein he dies,* or a county or corporation wherein he has estate." Code of Virginia, chapter 122, §23, page 575.

In *Burnel v. Luke, et al.,* 2 Rob. R., page 129, the court says: "that as the court of Orange county has general jurisdiction to grant administration when a proper state of facts existed, whether the court erred or not in determing that the facts were proved upon which the power to grant administration in the particular case depended is not to be enquired into collaterally. Until such orders or grants were reversed or revoked they conferred on the grantors all the powers of rightful administrators." *Fisher v. Bassett,* 9 Leigh, 119.

2. The circuit court having acted upon the authenticated copy of the will, its sentence is conclusive and

binding in every count in which the question comes collaterally before it, unless it had no jurisdiction over the subject.    The act of December 27, 1873, §22, page 649, conferred jurisdiction. The thirtieth section of this same act shows that the twenty-second section was intended to embrace authenticated copies of wills from other states as well as original wills.

It is, however, maintained that it was not necessary to have this authenticated copy of the will recorded in Greenbrier to make it admissible as evidence upon the trial of this case.    The will was properly recorded in Bedford county, Virginia, which rendered it unnecessary to have it recorded in any other county of the state. Greenbrier county, at the time of the sale and conveyance, was doing business in her courts as part of Virginia, and for all probate purposes must be held to be, at the time, a part of Virginia.

The act, however, of the 31st of March, 1873, expressly confirms all acts done by any executor in certain counties, of which Greenbrier was one, who qualified in the state of Virginia, from the 17th day of April, 1861, until the counties were organized under the laws of this state.    Acts of 1873, chapter 72, page 168–9.

The third ground of error that the copy of the will was not duly authenticated and proved so as to authorize the court to admit it to record in this state, and that it should have been excluded from the jury, are both answered by saying that the order of probate has not been reversed, and is in full force. The appellants made themselves partners to the motion, and the question being decided against them they have acquiesced in the decision.

4. Is not the deed under seal?    We think it is. There is a scroll to it representing a seal, and it was acknowledged before the clerk as a deed.    *Ashwell v. Ayres et al.,* 4⁷ᵢGratt., 283.    This authority is directly in point.    But the act of the Legislature would suffice to make the deed admissible.    Code, chapter 90, §20, page 520.    The appellants called the deed, a deed, and it purports to be an

1877.
January Term.

Smith *et al.*
v.
Henning.

indenture, which it could not be without being a deed.

5. It is executed as executor, which is recital enough to show the character in which. the vendor acted.

There were but two facts to be proved by the defendant—the will and the deed. We think we proved them completely.

HAYMOND, JUDGE, delivered the opinion of the Court.

The plaintiffs on the 22d day of April, 1872, filed in the circuit court of Greenbrier county, their declaration in ejectment against Thomas A. Henning, to recover two parcels of land, near the town of Lewisburg, in said county. The declaration contains three counts. One in the name of Elizabeth J. L. Jones, Sarah R. Duffy and Francis B. Smith; one in the name of Agnes M. Smith, Elizabeth J. L. Jones and Sarah R. Duffy, and the third and last count in the name of Agnes M. Smith, Elizabeth J. L. Jones and Alexander Knight, administrator of John W. Jones, deceased. Each count is for the same two parcels of land, and describes the same with more or less particularity. On the 22d day of November, 1873, the plaintiffs, by leave of the court, amended their declaration (but in what respect does not appear), and the defendant pleaded not guilty, and issue was duly joined on said plea. On the 17th day of June, 1875, there was a trial of the cause by jury before said court, and verdict found by the jury for the defendant, and judgment rendered thereon by the court in accordance with the verdict and for costs. During the progress of the trial, the plaintiffs excepted to rulings of the court, and after verdict moved the court for a new trial, which motion the court overruled. The plaintiffs tendered their bill of exceptions containing all the facts proved on the trial, the ruling of the court and exceptions thereto by the plaintiffs, which bill of exceptions was duly signed, sealed and made a part of the record. in the cause. To the judgment of said court rendered in said cause as aforesaid, the plaintiffs obtained a *supersedeas*

upon petition and assignment of error. The errors assigned by the plaintiffs in their petition, are the following:

The circuit court erred: First. In admitting as evidence the paper purporting to be a copy of the will of William Smith, deceased, because—

1. The dwelling house and real estate of said Smith being in the county of Greenbrier, the county court of Bedford had no jurisdiction to admit the original will to probate, consequently, a copy from said county court could not, if resisted, be legally admitted to record in Greenbrier county.

2. The laws of this state do not authorize a circuit court to admit a copy of a will from another state to record in this state; and

3. The said copy was not so authenticated and proved as to authorize the court to admit it to probate in this state.

*Second.* The copy of said will not having been properly proved or legally admitted to record as a will of realty in this state, it should have been excluded from the jury.

*Third.* The deed from John W. Jones, executor, &c., to the defendant, was improperly allowed to go to the jury as evidence, because—

1. The said Jones having qualified as executor, in the state of Virginia, after the formation of this state, and having never qualified in this state, his acts as executor in this state were void, and the deed made by him did not pass the title of the testator to the land mentioned therein.

2. The said deed is not under seal and does not purport to convey the title of the testator in said lands—no power being recited in said deed, it could pass nothing except the personal interest of the grantor in said lands; and,

3. The sale of said lands by said executor for a nominal and almost worthless currency or commodity, was a

plain violation of his trust, and a fraud to which the de-fendant was a party, and the deed being the result of a corrupt agreement could pass no title as against the plaintiffs; and,

4. The instructions asked for by the plaintiffs were each and all improperly and erroneously denied and refused by the court.

In disposing of the first error assigned, I will first consider the first division of the same, and will then consider each of the others *seriatim*.  It appears by the bill of exceptions, that, it was admitted on the trial that the land in the declaration mentioned is situate in Greenbrier county, West Virginia, and was in the possession of, and owned in fee by the late William Smith at the time of his death; that said land is now, and was at the commencement of this suit, in the possession of and claimed by the defendant, and that it is the same land that is mentioned and described in the deed from John W. Jones, executor, &c., to the defendant, hereinafter set forth, and under which the defendant claims title ; that the plaintiffs, then proved that the said William Smith died on the — day of July, 1863, at the residence of his son-in-law, John W. Jones, in the county of Bedford, in the state of Virginia, where he was staying as a refugee; that he had gone from his home, in Lewisburg, in the year 1862, and had taken with him his slaves, horses, wagon, carriage and some other property, to the county of Bedford; that the dwelling house of said Smith, at the time of his death, was in the county of Greenbrier, where he had resided for more than twenty years, and had declared his intention to return to it as soon as the war was over ; and that all the real estate owned by him at the time of his death lies in the counties of Greenbrier and Nicholas, in the state of West Virginia ; that the plaintiff, Agnes M. Smith is the widow of said William Smith, and the plaintiffs, Sarah R. Duffy and Elizabeth J. L. Jones are the daughters, and Francis B. Smith, the son, and only heirs of the said

1877.
January Term.

Smith *et al.*
v.
Henning.

William Smith. The defendant then offered in evidence, a certified copy of a paper purporting to be the last will of said William Smith, deceased, with the certificate of probate thereon from the county court of Bedford county, Virginia, a copy of the order of the qualification of John W. Jones as executor of said will in said court, and the order admitting said will and certificate to record by the circuit court of Greenbrier county, to the admission of all, or either of which, as evidence to the jury, the plaintiffs objected, but the court overruled said objection, and permitted the same to be read to the jury, and the plaintiffs excepted. Said certified copies of the will, certificates and orders were read to the jury, and are in the words following:

"I, William Smith, being of sound mind and disposing memory, do make this, my last will and testament: I will and bequeath to my wife, Agnes M. Smith, and my two daughters, Elizabeth J. L. Jones and Sarah R. Duffy, (John W. Jones acting by my appointment as trustee for Sarah R. Duffy), all my property of every description, both real and personal, including bonds, moneys, accounts, &c., (excepting my library and Nicholas county land, which will be disposed of hereafter). After the payment of all my just debts, my property of every description, (with the above named exceptions), I direct to be equally divided amongst my wife, Agnes M. Smith, and my two daughters E. J. L. Jones and S. R. Duffy, under the following restrictions, to-wit: After the death of my wife, Agnes M. Smith, I direct that her proportion of my estate shall revert to my two daughters, E. J. L. Jones and S. R. Duffy. Should my daughter, S. R. Duffy, die before my wife, intestate and without issue, then the whole of my wife's proportion of my estate shall revert to my daughter E. J. L. Jones, and in the event of her death, to her children. John W. Jones, of Bedford county, whom I hereby appoint and constitute a trustee for my daughter S. R. Duffy, shall hold all the property and effects derived from my estate, to which

she shall be entitled by this, my will, for her separate use and benefit, free from the debts, liabilities or control in any manner of her husband, Philip Duffy. I further direct that S. R. Duffy's proportion of my real estate be sold as soon after my death as may be, if she desire it, and that the proceeds be held by said trustee for her separate use as aforesaid, subject to any disposition she may think proper to make of them. I will and bequeath to my daughter, E. J. L. Jones, my entire library, consisting of books of every description. I will and bequeath to my son, Francis B. Smith, and his children, my tract of land in the county of Nicholas; should said Francis B. Smith, however, die before either of my daughters, or without children, then this Nicholas land shall revert to my two above named daughters. Whosoever of said parties to this will that shall attempt to change or break said instrument in any manner, shall forfeit all claim or claims to *their* specified proportion of my estate. Lastly, I do hereby appoint and constitute my son-in-law, John W. Jones, my executor, to sell and convey any real estate that I may have, and to do any and all acts proper for an executor.

"Signed this 27th day of June, 1863.

"Wm. Smith.

" W. A. London.
" F. M. Hawkins."

" At a court of quarterly sessions, begun and held for Bedford county, at the court house, on Monday, the 27th day of July, 1863, this last will and testament of Wm. Smith, deceased, was produced in court, proved according to law by the oaths of W. A. London and F. M. Hawkins, the subscribing witnesses thereto, and ordered to be recorded. And on the motion of John W. Jones, the executor named in the will, who made oath thereto, and together with Thos. M. Jones and Ro. C. Jones, his securities, entered into and acknowledged a bond in the penalty of $20,000, conditioned according to law, certi-

ficate was granted him to obtain a probate of said will in due form. And the said bond was ordered to be recorded.

"Teste :          · A. A. ARTHUR, *C. B. C.*"

"*State of Virginia, Bedford county, to-wit :*

I, Robert S. Quarles, clerk of the county court of the county and state aforesaid, do certify that the foregoing paper, signed William Smith, is a true copy of the original will of William Smith, deceased, which will is on file in the clerk's office of said court, and that the order following, admitting said will to probate, is a true transcript from the records of said court.

" Given under my hand and seal of said court, this, the 10th day of June, A. D., 1874, in the ninety-eighth year of the commonwealth.

[Court seal.]          "Ro. S. QUARLES."

At a circuit court held for Greenbrier county, at the court house thereof, on Monday, June 14, 1875, this day came the parties by their attorneys, and the plaintiffs, Samuel Gilkeson, Thomas A. Henning and others, moved the court to admit a paper, purporting to be a certified copy of the will of William Smith, deceased, from the county court of Bedford county, Virginia, to record in this court, and the court, after hearing the evidence and argument of counsel, is of opinion that the said paper should be admitted to record, and have the same effect, both as a will of personal and real estate, as the original would have if admitted to record. It is, therefore, considered by the court that said copy be recorded in this court as a will of real and personal estate, and that the plaintiffs recover their costs of the defendants."

Memo.—" On the trial of this motion, the defendants took a bill of exceptions to the rulings and judgment of the court, which is signed, sealed and made a part of the record in this cause."

The plaintiffs' counsel argues that the order of the county court of the county of Bedford is void and of no

effect, because said county court of the county Bedford, Virginia, had no jurisdiction or authority to admit said will of William Smith, deceased, to record as appears from the facts proven in this case. The law in force in Virginia, and this state, at the time said will was made, and at the death of said William Smith, in relation to probating of wills will be found contained in chapter one hundred and twenty-two of the Code of Virginia of 1860, and section 23 thereof, is as follows:

" 23. The circuit, county and corporation courts shall have jurisdiction to hear and determine suits and controversies, testamentary, according to the following rules, that is to say: in the county or corporation wherein the defendant has a mansion house, or known place of residence; if he has no such house, or place of residence, then in a county or corporation wherein any real estate lies that is devised or owned by the defendant; and if there is no such real estate, then in the county or corporation wherein he dies, or a county or corporation wherein he has estate."

It must be admitted that this statute conferred jurisdiction upon the county court of the county of Bedford over the *subject matter* of admitting wills to probate. I think there can be no doubt upon this subject. If this then, is true, can the judgment of the county court of Bedford admitting the will to record be questioned in this collateral way? In the case of *Fisher v. Bassett, et al.*, 9 Leigh, 119, it was held that where " a county or corporation court grants administration of the estate of a foreigner, who died abroad, and who had no residence in the county or corporation at the time of his death, and had no estate of any kind there, so that in truth the state of facts is not such as to give jurisdiction to grant administration in the particular case, according to the provisions of the statute. 1 Rev. Code, ch. 104, §12, 32—yet—*held*: that such a grant of administration is not *void*, but only a voidable act; and, therefore, rightful acts of and fair dealings with the administrator,

consummated before his administration is revoked or suspended, cannot be impeached." In that case, Judge Tucker remarked, at page 131, in his opinion: "I do not consider a county or hustings courts, in relation to the grant of administrations as standing on the same footing with the ordinary in *England*. The county court is a court of record, and its judgments or sentences cannot be questioned, collaterally in other actions, provided it has jurisdiction of the cause, 6 Bac. Abr. Sheriff M. 2, p. 166; 3 Wils., 345. And this is to be understood as having reference to jurisdiction over the *subject matter*, for though it may be that the *facts* do not give jurisdiction over the particular case, yet if the jurisdiction extends over that *class of cases*, the judgment cannot be questioned; for then, the question of jurisdiction enters into and becomes a part of the judgment of the court." And on page 132, he says: "But when the court has jurisdiction of cases, *ejusdem generis*, its judgment, in any case, is not merely void; because its individuality cannot appear without an inquiry into the facts; an inquiry which the court itself must be presumed to have made, and which will not, therefore, be permitted to be raised collaterally." In the case of *Burnley's representatives v. Duke et al.*, 2 Rob. R. 102, the court in its opinion in the case, at page 129, says: "The court is of opinion, that as the court of *Orange* county had general jurisdiction to grant administration when a proper state of facts existed; whether the court erred or not in determining that the facts were proved upon which the power to grant administration in the particular case depended is not to be inquired into collaterally. Until such orders or grants were reversed or revoked, they conferred on the grantees all the powers of rightful administrators." Although this state became a separate state of the Union on the 20th day of June, 1863, and the said William Smith died in a month or less thereafter, still at the time of his death and of making the will, and at the time the will was probated, and

in fact until the end of the late civil war between the government of the United States and the government of the so-called confederate states, the government of Virginia, at Richmond, continued and maintained jurisdiction and control over the counties of Greenbrier and Bedford, and in fact a large majority of the counties of the state, and enforced and administered therein her laws through here judicial tribunals. The government of this state, it is well known as a historical fact, never extended her laws over the county of Greenbrier until after the close of said war. And the restored government of Virginia never did extend its jurisdiction over the county of Greenbrier, nor did it extend its jurisdiction over the county of Bedford until after the close of said war. In the case of *Clay v. Robinson's adm'r,* 7 W. Va. R., 348, the judge who delivered the opinion of the court said: " But this state was formed during the late great civil war, from the territory of Virginia. Prior to and at the time of the commencement of the war the seat of government of Virginia was at the city of Richmond. About the time of the commencement of the war the authorities of the government of Virginia, at Richmond adhered to; and united with the confederate states in the war with the United States, and so did a large portion of the citizens of Virginia, and in fact the larger part of the counties thereof. Soon after the government of Virginia at Richmond, became identified with the confederate states, in the war, another government of Virginia, known and called as the restored government of Virginia, was organized and established at the city of Wheeling, where it existed until the formation of this state. The restored government of Virginia was recognized by the government of the United States from its organization, as the lawful government of Virginia. The government of this state recognized as the lawful government of the state by the government of the United States, with its seat of government located at Wheeling as the temporary capital, adhered to and aided

1877.
January Term.

Smith et al.
v.
Henning.

the government of the United States in the war. It had its troops in the field aiding Federal forces to maintain, not only the Federal, but its own authority over its territory; but nevertheless, the confederate troops held the county of Greenbrier by paramount force and thus maintained over it the state organization and authority, which adhered to the confederate cause, and held its capital at Richmond."

"However much the citizens of Greenbrier county might have desired to have organized under the constitution and laws of this state, they could not do so, and have the constitution and laws enforced among and over them. They could not do so, because of the paramount force of the state government at Richmond; and although that government was declared to be an unlawful government, it was, nevertheless, an actual government of paramount force at that time; or, in other words, it was a *de facto* government." And this Court, in that case, recognized the validity of the appointment of an administrator by the county court of Greenbrier during said war, until an administrator was appointed by legal authority under and according to the laws of this state. See, also, *Henning v. Fisher*, 6 W. Va. R., 238. At the time of the death of said William Smith, and the probating of said will and the qualification of the executor, the counties of Greenbrier and Bedford were within and were under the same state governmental jurisdiction and authority. They were each governed by the same *de facto* government, and subject to the same laws and justice, and the laws were administered in each by the same description of courts, one of which was the county court. Under this condition of things, it is obvious that it was unnecessary for the will of said William Smith to be probated in more than one county over which the jurisdiction and authority of the government of Virginia at Richmond was maintained. And the person who qualified as executor of the probated will, and in the same court that admitted the will to probate, might as right-

fully exercise the duties and privileges of his position of executor in the county of Greenbrier as in the county of Bedford, until his authority was revoked, or ceased by the extension of the laws of this state and the enforcement thereof over and in said county of Greenbrier. It seems to me, under the authorities I have cited, that the validity of the said orders of the county court of Bedford county cannot be called in question in this case, or collaterally, as is attempted by the plaintiffs. I do not feel myself authorized to hold that the order of the county court of Bedford county, admitting said will to probate, is *void*, and in my opinion the most that can be said against it is that under the facts shown in this case, it is, perhaps, *voidable*, and only voidable. It is manifest, for the reasons above expressed, that the order of the county court of Bedford county, showing the qualification in that court of the executor, John W. Jones, appointed as such by the will is not void as to the qualification of such executor and cannot be held to be void in this suit or proceedings. Entertaining these views, I am of the opinion that the said order of the county court of Bedford county, showing the admission to record of said will, by said county court, and the qualification of said executor must not only be considered valid in this proceeding, but admissible as evidence at the trial of this cause for any legitimate purpose involed in the issue. Code of West Virginia, ch. 130, §5 and 7. The next question to be determined is, whether the order of the circuit court of the county of Greenbrier admitting the duly certified copy of said will to record in that court, is invalid and void. This involves an important question, because if this order is invalid and void, because of no statute authorizing it, or conferring upon the circuit court jurisdiction and authority to admit to record in this state a copy of a will admitted to record in another state in respect to, or devising property within this state, then it is evident from the legislation upon the subject that the

county court, nor the clerk thereof, or any other person or tribunal, has any such power or authority under our legislation. And if this is so, it may well be said that our legislation, is shockingly deficient in this respect, and the title to much real and personal property may thereby be disturbed and great confusion and loss ensue. The twenty-sixth section of chapter one hundred and twenty-two of the Code of 1860 aforesaid, provided for such case. The fifth section of chapter one hundred and eighteen of the Code of 1868, is as follows : "Where a will, relative to estate within this state has been proved without the same, an authenticated copy thereof and the certificate of probate thereof, may be offered for probate in this state. When such copy is so offered, the recorder to whom it is offered, shall presume, in the absence of evidence to the contrary, that the will was duly executed and admitted to probate as a will of personalty in the state or county of the testators' domicil, and shall admit such copy to probate as a will of personalty in this state. And if it appear from such copy that the will was proved in the foreign court of probate to have been so executed as to be a valid will of lands in this state by the law thereof, such copy may be admitted to probate as a will of real estate." The third section of the acts of the Legislature, approved December 24, 1872, confers upon the county court jurisdiction in all matters of probate, the appointment and qualification of personal representatives, &c. Acts of 1872 and 1873, p. 35. The third section of the act of the Legislature approved December 21, 1872, and found · on pages 42, 43, &c., of said acts of 1872–3, confers upon the circuit court jurisdiction of the probate of wills or qualification of a personal representative, &c. On the 21st day of November, 1873, the Legislature passed an act conferring on the circuit court "concurrent jurisdiction with the county courts in all matters of probate of wills, the appointment and qualification of personal representatives," &c. Acts of 1872–3, page 456, 457.

chapter 178 of the acts of 1872–3, page 529, provides that "the clerks of the several county courts, when such court or the circuit court is not in session, shall have the same power to admit wills to record, appoint and qualify personal representatives, &c., as such courts now have. *Provided,* That no jury shall be impanneled by such clerks to settle questions of fact between them." On the 27th day of December, 1873, the Legislature passed an act entitled : " An act to amend and re-enact sections twenty-two, twenty-six and thirty, of chapter seventy-seven of the Code, concerning wills," which is as follows: "Be it enacted by the Legislature of West Virginia :

1. That sections twenty-two, twenty-six and thirty of the Code be amended and re-enacted so as to read as follows :

"22. The circuit and county courts shall have jurisdiction to hear and determine suits and controversies concerning wills, according to the following rules, that is to say, in the county wherein the deceased has a mansion house, or known place of residence; if he has no such house or place of residence, then in a county wherein any real estate lies that is devised or owned by the decedent; and if there be no such real estate, then in the county wherein he has estate.

" 26. In every such proceeding the court may require all testamentary papers of the same decedent to be produced. If any person interested ask it, it shall order a trial by jury, to ascertain whether any, and if any, which of the papers produced be the will of the decedent; and if no such trial be asked, shall proceed without it to decide the question of probate. The court shall make a sentence or final order as to the probate, and certify the same to the clerk of the county court.

" 30. Every will, or authenticated copy thereof, admitted to probate under the provisions of this chapter, shall be recorded by the clerk of the court in which the pro-

bate was had, and when recorded, shall remain in the office of such court, except when removed therefrom.

" 2. This act shall be in force from its passage."

This act does not repeal or amend expressly any section or part of said chapter seventy-seven of the Code, except said twenty-second, twenty-sixth and thirtieth sections of said chapter. And it was manifestly the intention of the Legislature, in amending and re-enacting said sections, that they shall, as amended and re-enacted, be considered as constituting a part of said seventy-seventh chapter of the Code, and occupying the same position as sections of said chapter as they occupied before the passage of said act. The amendment and re-enactment of one section of a chapter of the Code, cannot be regarded as necessarily repealing the other sections of that chapter in the absence of a repealing clause, though the section amended and re-enacted may in some cases be properly construed as operating such repeal by implication. I have before quoted the fifth section of chapter one hundred and eighteen of the Code of 1868. And although the second clause of that section became inoperative from the 1st day of January, 1873, because at that time the office of recorder in this state ceased to exist, still I am not aware that the first clause of that section has ever been repealed, and I see no valid reason why it may not be considered as still in force for necessary and proper purposes. But, be this as it may, the court must construe a statute in accordance with the legislative intent, since it must always be presumed that the legislature designed the statute and each section thereof to take effect, and not be a nullity. In considering a statute with a view to its interpretation, the thing which we are to seek *is the thought which it expresses.* The whole of a statute is to be examined with a view of arriving at the true intention of each part. A section or clause standing by itself may seem of doubtful import, and yet may be made plain by comparison with other sections or clauses, or portions of the same law. "If

1877.
January Term.

Smith *et al.*
v.
Henning.

any section of a law be intricate, obscure or doubtful, the proper mode of discovering its true meaning is by comparing it with the other sections, and finding out the sense of one clause by the words or obvious intent of` another." Effect is to be given if possible, to the whole statute, and to every section and clause. Keeping in view these rules in relation to the construction of a statute, there can, I think, be no reasonable doubt, from the language employed by the Legislature in the thirtieth section of said act of the 27th of December, 1873, amended and re-enacted as part of said chapter seventy-seven of the Code, that it was the intent and purpose of the Legislature by said act and chapter seventy-seven of the Code, that an authenticated copy of a will might be admitted to record under the provisions of said chapter as amended by said act. If the Legislature did not so mean why would they say in said thirtieth section : "Every will, *or authenticated copy thereof,* admitted to probate under the provisions of this chapter," &c. It will be seen that chapter seventy-seven of the Code of 1868, nowhere mentions an authenticated copy of a will except in section thirty thereof, and said section thirty of said act, as amended and re-enacted thereby, is in all respects similar to said section thirty as contained in said chapter seventy-seven of the Code, except the section as amended substitutes for the " recorder" the " clerk of the court in which the probate was had." The difficulty in regard to the question under consideration chiefly arises in this way : Chapter seventy-seven of the Code of 1868, is chiefly copied from chapter one hundred and twenty-two, of the Code of Virginia of 1860, and said section twenty-six and all other sections of said chapter one hundred and twenty-two, in relation to authenticated copies of wills, whether proved without the state or not, were omitted from chapter seventy-seven of the Code of 1868, except section thirty-seven, which as contained in the Code of 1860, is as follows: " Every will or authenticated copy so admitted to record by any

court, shall be recorded by the clerk thereof, and remain in the clerk's office, except during such time as the same may be carried to another court under a *subpœna duces tecum.*" It may readily be seen by consulting chapter one hundred and twenty-two of the Code of 1860, that "authenticated copy thereof" as employed in said thirty-seventh section included an authenticated copy of a will relative to real estate within this state where the will had been proved without the same. Section twenty-six, of said chapter one hundred and twenty-two, of the Code of 1860, is substantially carried into chapter one hundred and eighteen of the Code of 1868 and constitutes section five of that chapter, which is hereinbefore recited. It is quite clear from the provisions of chapters seventy-seven and one hundred and eighteen of the Code of 1868, that "authenticated copy thereof" as employed in section thirty of chapter seventy-seven of the Code includes an authenticated copy of a will, proven without this state, relating to property within the same. And if it included such authenticated copy before it was amended and re-enacted, it includes the same since it was amended and re-enacted, by said act of the 27th day of December, 1873. On consideration of the whole legislation on the subject now in existence so far as I am advised, and to which I have referred, it is clear to my mind that the thirtieth section of said chapter seventy-seven as amended and re-enacted includes an authenticated copy of a will proved without the state relating to property within the state. The said will of William Smith, it is clear, was proven by the two subscribing witnesses thereto before the said county court of Bedford, as a will of both real and personal estate, and as disposing of such estate by virtue of the laws of Virginia, and as such, the said county court admitted it to probate by its sentence or order, which seems to be in the usual form in such cases. The law of Virginia at the date of said will, at the death of the testator, and at the time the will was admitted to probate, in relation to the

making of wills, the mode of their execution, and the attestation thereof by subscribing witnesses, and the proof thereof, and in every respect in relation to real or personal property was the same as in this state. In fact the provisions of the Code of Virginia, of 1860, at those times, in relation to the making and executing of wills in relation to real and personal property were identically the same as in this state. After said will was admitted to probate, it is under the order of said county court, as the same was proven before said court, and by it admitted to probate by its said order, a will disposing of real and personal estate, and until the end of the war an official copy thereof tested by the clerk of said county court in due form together with an official copy of the said order or sentence admitting the will to probate, would under the law, have been properly received as evidence in any of the courts sitting in the county of Greenbrier, during said war, as a will passing real estate. Under the circumstances of this case and for the reasons stated, I do not think the order of the circuit court of the county of Greenbrier, admitting said authenticated copy of said will to record is invalid or void. I think the circuit court had jurisdiction of the subject matter under the legislation, and if it erred in its judgment in admitting said authenticated copy of said will to probate on the evidence before it (which I do not mean to intimate as being the fact), such error cannot be taken advantage of or corrected collaterally as attempted in this case by the plaintiff, but the error, if it exists must be corrected in the mode and manner prescribed by law in such cases. For the foregoing reasons I am of opinion that the plaintiff's said first error assigned is not well taken, and that the circuit court did not err in admitting as evidence the said paper purporting to be a copy of the will of William Smith, deceased, for the reasons assigned in said assignment of error.

For reasons hereinbefore stated, the second error assigned by the plaintiff is not well taken and is overruled.

It further appears by the said bill of exceptions that

1877.
January Term.

Smith *et al.*
v.
Henning.

defendant proved that the plaintiff, Sarah R. Duffy, was, at the time of her father's death, and now is, the wife of one Phiilip Duffy, and that the plaintiff, Elizabeth J. L. Jones, is the widow of John W. Jones, the person named as executor in the will of said William Smith, and also a trustee for the plaintiff, Sarah R. Duffy; that said John W. Jones, came to the county of Greenbrier, and, claiming to act of executor of the said will, exposed to sale, at public auction in the town of Lewisburg, Greenbrier county, West Virginia, after having duly advertised said sale, the land in the declaration mentioned, and the defendant, being the highest bidder, became the purchaser thereof; that said sale was made on the ——— day of September, 1863, and the defendant paid for said land on the day of sale; that at the time of said sale the plaintiff, Agnes M. Smith, was present and was anxious to have the land bring a good price : that both she and said Jones stated that the land was being sold in order that the proceeds arising from the sale might be invested in Bedford county, Virginia, for the benefit of the devisees under the will of the said William Smith, deceased, and that since the institution of this action the plaintiffs, except F. B. Smith, had stated in depositions that they claimed under said will.

The defendant then offered in evidence certified copies from the clerk's office of the county court of Greenbrier county, of a deed and certificate of acknowledgment from said John W. Jones, executor, &c., to the defendant, (which deed it is admitted embraces the land in controversy), to the admission of which the plaintiffs objected, but the court overruled said objection, and admitted the same, and the plaintiffs again excepted, and said copies were read to the jury as evidence, and they are in the words following :

" This indenture, made this 11th day September, 1863, between John W. Jones, executor of William Smith, deceased, of the first part, and Thos. A. Henning, on the second part, witnesseth :

That in consideration of $3,355 in hand paid the said Jones, executor as aforesaid, by the said Henning, the said Jones, executor as aforesaid, doth grant, bargain and sell unto the said Henning the following lots, parts or parcels of land lying and being in the county of Greenbrier, near Lewisburg, to-wit: Lot containing two and three-quarter acres, more or less, and bounded as follows: Beginning at a stake corner to Joel McPherson, and with his lot south 35° west 22 poles and 7 links to a stake on alley; and with said alley south 55° east 20 poles and 4 links to stake corner to Jno. A. Hunter; and with —— north 35° east 22 poles 7 links to stake corner to Jno. Withrow; and north 53° west 20 poles, 4 links, passing Withrow's corner at 19 poles, 14 links, to the beginning. Second, lot, containing eleven and one fourth acres, more or less, adjoining the lands of Mrs. Preston, &c.: beginning at a corner to certain lots, south 45° east 43¾ poles to a stake, and with Mrs. Preston's line south 41° west 40 6-10 poles to two black oaks near a house, and with said Preston north 45° west 47 poles to a stake on Preston's line, corner to J. W. Dunn, and with Dunn, in part, north 45° east 40 poles to the beginning; being the same lot of land conveyed by M. McClanahan to the said William Smith, deceased, by deed bearing date July 15th, 1845, to which reference is here had. Third, lot, containing two acres, more or less, adjoining the last mentioned lot, bounded on the north by the Mathew road, on the south by the aforesaid lot, on the west by S. S. Hoover's lot, being the same lot conveyed by Peter L. Anderson, to the said William Smith, deceased, by deed bearing date November 21, 1860, to which reference is here had. To have and to hold the aforesaid lots or parcels of land, and their appurtenances, &c., the said Thomas A. Henning, his heirs and assigns forever.

(Signed)         JOHN W. JONES, [Seal.]
                 *Executor of Wm. Smith, deceased."*

"CLERK'S OFFICE OF GREENBRIER COUNTY COURT, }
                                September, 11, 1863. }

This deed was this day presented in the office, and the execution thereof being duly acknowledged by John W. Jones, executor, the vendor, is admitted to record.

Teste:          JOEL McPHESRON, *Clerk.*"

The third error assigned by the plaintiffs, is divided into three divisions, and for the sake of convenience, I will consider said divisions consecutively. "However, it may have been formerly, now it is established in the United States, as a general rule, that if it be necessary to sue for the rights of a decedent to personal property such suit can only be maintained by a person to whom there has been granted probate of the will or administration of the estate of such decedent. And a grant of probate or administration in a state different from that in which the suit is brought, will not be sufficient, unless it be allowed by some particular statute or usage in the state wherein the estate may be." 1 Rob. Prac., (new) 161. Gibson, C. J. in *Motland v. Wierman*, 3 (Pa.) Penrose & Watts; *Miller's estate*, 3 Rawle, (Pa.) 319. "The reason equally applies when an executor or administrator who has qualified in one state, proceeds by virtue of that qualification to sell goods left by his decedent in another state. If for example, an executor who has qualified in Delaware, sell goods left by his decedent in Maryland, and afterwards there be a grant in Maryland of administration with the will annexed on the estate of the same decedent, the administrator under this last grant may maintain an action of trover against the executor for the value of the goods." 1 Rob. Prac. (new) 161, 162. *Glenn v. Smith*, 2 Gill. & Johns., 506, 507. While all this is true, as a general rule, still on the principles settled by this Court in the cases of *Clay v. Robinson, adm'r*, 7 W. Va. R., 348; *Harrison's ex'r. v. Farmer's Bank, of Virginia*, 6 W. Va,, 1; opinion of Paull, Judge, *Henning v. Fisher, id.*, 238. The will of said William Smith

having been made in the county of Bedford as aforesaid, and the property involved in this suit, being situate in the county of Greenbrier, and both of said counties being, at the date of said will, and at the date of the probate thereof, and the qualification of the said executor, and at the date of the sale of the executor to the defendant, of the land in controversy, within the jurisdiction and under the authority and actual government of the said government of Virginia, at Richmond, and the government of this state not having extended its jurisdiction and authority over either of said counties, it was not necessary for said executor to authorize him to act as such and to exercise the power or powers conferred by said will upon him as such executor in the said county of Greenbrier, before acting as such executor and exercising the powers conferred by said will, to first qualify as such executor in the said county of Greenbrier, within the boundaries of this state. If the executor had probated the said will in the county of Greenbrier and qualified therein as executor thereof, during said war, he would have been compelled to have done so, before the county or circuit court of Greenbrier county, judicial tribunals maintained and acting in and for said county under the authority of said government of Virginia, at Richmond, until the end of said war between the government of the United States and the government of said confederate states. In the said case of *Henning v. Fisher*, it was held by this Court that the recordation of a deed by a clerk of a county court, who continued to exercise his office after the state had passed the ordinance of secession, but while the county was under the military power of the confederate states, was a valid recordation and must so be recognized in all judicial proceedings. See also *Texas v. White*, 7 Wall., 733; *Thorington v. Smith*, 8 Wall., 1; *Griffin v. Cunningham*, 20 Gratt., 31; *Sherfy v. Argenbright*, 1 Heiskell, 128. The principles decided by this Court in the cases before referred to, and reported in the sixth and seventh W. Va. R., were independ-

1877.
January Term.

Smith et al.
v.
Henning.

ent of the acts of the Legislature of this state, passed March 31, 1873. See acts of 1872–3, p. 168, 169, more special reference to which is hereinafter made. The first division of plaintiff's third assignment of error is not well taken unless the deed from said executor, Jones, to the defendant be invalid for other reasons than those assigned in said first division. I now pass to the consideration of the said second division of plaintiff's third assignment of error. In the twelfth division of section seventeen of chapter sixteen of the Code of 1860, it is provided as follows: " And in any case in which the seal of any natural person shall be required to a paper, it shall be sufficient for such person to affix to such paper a scroll by way of seal." The fifth section of chapter one hundred and eighteen of the Code of 1860, provides that " every such contract, every deed conveying any such estate or term, and every deed of gift, or deed of trust or mortgage, conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed, may be." The second section of chapter one hundred and twenty-one, of same Code, provides that " the court of any county or corporation in which any writing mentioned in the preceding section, or in the one hundred and nineteenth chapter, or in the fifth section of the one hundred and eighteenth chapter, or any deed of emancipation, is to be or may be recorded, or the clerk of any such court in his office shall admit to record any such writing as to any person whose name is signed thereto, when it shall have been acknowledged by him, or proved by two witnesses as to him in such court, or before such clerk in his office." The eighth section of same chapter requires that every writing so admitted to record, shall with the certificates of acknowledgment, &c., be recorded by the clerk. In the case of *Parks v. Hensett, &c.,* 9 Leigh,

1877.
January Term.

Smith *et al.*
v.
Henning.

page 511, the writing in question was a paper writing made to confer freedom upon a slave. The principal question before the court was whether said paper writing was a deed. In that case Judge Parker, who seems to have delivered the opinion of the court upon that, point, says, at pages 514, 515 and 516, "the common law does not require that the party should anywhere in the instrument speak of a seal, but only that it be sealed, and the sealing proved, * * * The true doctrine is stated with great clearness by Chief Justice Tilghman in the case of *Taylor v. Glassel*, 2 Serg. & Rawle, 504. "There are two principles" says he, well founded : one, that although in the body of the writing it is said that the parties have set their hands and seals, yet it is not a specialty unless it be actually sealed and delivered ; another that if it be actually sealed and delivered, it is a specialty although no mention be made of it in the body of the writing. The *fact* and not the assertion, fixes the nature of the instrument. Thus to constitute a sealed instrument, there must be a seal or scroll affixed, and some. recognition of it in the instrument, or some evidence of it *aliunde;* but it can never be maintained that such evidence, whether by the proof of witnesses or acknowledgment of the party, will not supply the place of such, recognition, * * Thus suppose he says at the time, "I affix this scroll as my seal" or within the scroll he writes the word "seal" and delivers it as his deed ; I am at a loss to concieve how any court or jury, could resist the conclusion that it was a sealed instrument. It is said, however, that the decisions in this Court are inconsistent with this opinion; and there may be some loose expressions to be found in them giving countenance to the objection. But when the cases themselves are carefully examined, I am persuaded they will not be found to support it. They are the following : *Baird v. Blaigrove*, 1 Wash., 170 ; *Austin's adm'x v. Whitlock's ex'rs*, 1 Munf., 487 ; *Anderson v. Fullock, &c.,* 4 Munf., 442 ; *Jenkins v.*

*Hurst's com'rs*, 2 Rand., 446; *Peasley v. Boatright*, 2 Leigh, 195, and a late case not yet reported. * * I must content myself with a few general observations respecting their scope and effect. In all these cases the writings purported to be signed only. * * In none of these was the instrument such as the law required to be recorded, or such as it made available only when sealed; and in not one was there any proof that the instrument had been actually sealed, or scrolls annexed by way of seal. The court had to judge by inspection of the paper; and the Judges say that as in its beginning, conclusion and *attestation,* no mention is made of its being sealed, and the fact is not otherwise proved, but rendered improbable by other circumstances, the *mere* accident of a scroll being found was insufficient to show it was affixed by *way of seal,* when possibly it might have been added by inadvertance, or afterwards by the holder." In the case of *Ashwell v. Ayres et al.,* 4 Gratt., 283, it was decided by the Court of Appeals of Virginia, that an instrument of writing purporting to convey land with a scroll attached to the grantor's name, though the scroll is not recognized in the body of the instrument, will be held to be a deed, when the instrument has been acknowledged by the grantor as his deed for the purpose of having it recorded." In the case at bar the paper writing in question, called the deed from Jones, the executor, to the defendant, for the land in controversy, commences: " This indenture," &c. It is signed by the executor with his name, with a scroll opposite his name, and within the scroll the word seal is written. In this condition the said paper writing is presented to the clerk of the county court by the grantor therein, and as presented with the scroll, seal and all, is acknowledged by him before the clerk. Taking the certificate of the clerk and the whole paper together, it is manifest that the grantor not only acknowledged the whole body of the paper writing, but his signature and scroll as his seal, because the word "seal" was written within the scroll,

and also that in acknowledging it before the clerk, he acknowledged it as his deed as was then understood by the clerk, as is manifest from the certificate of the clerk. Besides from the facts and circumstances it was manifestly the intention of the grantor to make a deed. By authority of the principles enunciated in the said two cases cited in 9 Leigh, and 4 Gratt., the said paper writing must be held to be the deed of said executor, Jones. I do not understand the doctrine of said two cases, or my conclusion in this case, as contrary to the principles enunciated in *Starkweather v. Martin et al.*, 28 Mich., 471; *Pringle v. Dunn*, 37 Wis., 449; S. C. 19, Am. R. 772.

The power to sell given by the will, is not recited in the deed to defendant, and it is insisted this fact renders said deed of no effect. In Perry on Trusts, 2 vol., 2 ed., §511c, it is said: "The donee of a power may execute it without expressly referring to it, or taking any notice of it, provided that it is apparent from the whole instrument that it was intended as an execution of a power. * * The intention to execute a power will sufficiently appear (1) when there is some reference to the power in the instrument of execution; (2) when there is a reference to the property which is the subject matter on which execution of the power is to operate, and (3) when the instrument of execution would have no operation, but would be utterly insensible and absurd, if it was not the execution of a power."

In the 4th vol. Cruise Digest, page 168, it is said: "An instrument may operate as a revocation and appointment, without any recital or mention of the power. For if the act done be of such a nature that it can have no operation, unless by virtue of the power, the law will resort to the power and thereby give validity to the instrument, upon the principle that *quando non valet quod ago cet ago valeat quantum volere potest.*" *Peate v. Spieren. et al.*, 2 Desaus. Ch. Rep., 460; 3 Johns. Ch. Cases, p. 551 and cases there cited. *Andrews v. Emmett*, 2 Brown Ch. Rep., 231 and 236 top p. and 300 side p.; *Bennett v.*

*Aburron,* 8 Vesey Jr. R., 609; 4 vol. Kent's Com. 6 ed., top p. 328, side p. 329; same vol. 333, 334. The case of *Lockwood v. Sturdevant,* 6 Conn. R., 373, seems to be to the contrary, but, I think that the weight of authority as well as reason is against it. The deed in the case at bar is made by the executor as such, and we may well and properly look to the will for the power to sell and convey as executor. And if the will contains the power or authority to sell the land as executor, it is not essential to the validity of the deed that it should recite the power and authority on its face—it is doubtless the better practice to do so. In the case at bar, it seems to em that no one could be injured by the failure to recite in the deed the power to sell given by the will. For these reasons, it seems to me, that the second division of the plaintiff's said third assignment of error is not well taken. I do not think the mere fact that the executor sold the lands in controversy for confederate treasury notes, was sufficient to authorize the court to exclude the said deed from Jones, executor, to the defendant, for the lands in controversy, under the circumstances of this case, from the jury as evidence. The third assignment of error of the plaintiff in my judgment, is therefore, not well taken, and is overruled. In fact, there is no evidence in the case as to what was the value in gold or good money of said lands at the time of sale other than what may be inferred from the gold value of confederate treasury notes at the time of the sale.

It further appears by said bill of exceptions, that the plaintiffs proved that the sale aforesaid, by Jones, executor, &c., to the defendant was made for treasury notes of the late confederate states, and that at the time of said sale, it took $12 of said notes to parchase $1 in gold, and that at the time the said Jones, executor, &c., and the plaintiffs, Agnes M. Smith and Elizabeth J. L. Jones, resided in the county of Bedford, in the State of Virginia, and that the defendant resided in Greenbrier, county, West Virginia, where said deed was executed, delivered and recorded,

The plaintiffs then offered in evidence a certified copy of the appointment of the plaintiff, Alexander Knight, as the administrator of said John W. Jones, who departed this life before the institution of this action, which copy is in the words following :

" STATE OF WEST VIRGINIA,
            " RECORDER'S OFFICE, April 2, 1872.
    "John W. Jones, having departed this life more than three months since, and no one having applied for administration of his goods and chattels, on the motion of Sarah R. Duffy, by her counsel, it is ordered that Alexander Knight, sheriff of Greenbrier county, do take the estate of the said decedent into his possession and administer the same according to law.
    Teste :
                    GEO. H. LEWIS, *Recorder.*

The plaintiffs also proved that the plaintiffs, except the said Alexander Knight, were the devisees mentioned in the will of said William Smith, deceased.

The plaintiffs then moved the court to exclude as evidence the deed from said Jones, executor, &c., to the defendant, but the court overruled said motion, and the plaintiffs again excepted.

These being all the facts proved on the trial, the plaintiffs moved the court to instruct the jury as follows :

"First. If the jury believe from the evidence that the dwelling house of William Smith was in Greenbrier county, and all the real estate owned by him at the time of his death was in the counties of Greenbrier and Nicholas, West Virginia, and that he was only temporarily absent from his dwelling house in Greenbrier county at the time of his death, in Bedford county, then the will of said Smith was not properly admitted to record in Bedford county, Virginia, and the admission of a copy of said will from said record in Bedford in this court, did not make said said copy evidence in this cause."

"Second. That if the land in controversy was not sold by Jones, executor, &c., for the payment of debts of the testator, and the defendant had notice of that fact, then under the will of said Smith, the said executor, as such, had no authority to sell the land sued for in this suit."

"Third, that if John W. Jones did not qualify as executor of said Smith, in this state, at the time or before the sale of the land to the defendant, mentioned in this action, or before the execution and delivery of the deed for said land to the defendant, then they must find for the plaintiffs.

And the court refused to give either or any of said instructions, and the plaintiffs excepted.

Under the views and principles hereinbefore enunciated and declared, I do not think the court erred in overruling the plaintiffs motion to exclude the said deed from Jones' ex'r &c., to the defendant, from the jury as evidence. The 72 chapter and 1 section thereof, of the act of the Legislature of this state, approved on the 31st day of March, 1873, provides, in substance that so far as applicable to this case any act or deed done and performed by any executor, administrator or other fiduciary, in any of the counties of this state, in which the re-organized government of Virginia or the government of West Virginia, was not in operation or in force between the 17th day of April, 1861, and the time of the organization of this state, who qualified as such executor or fiduciary in the state of Virginia, shall have the same force and effect as though said executor or fiduciary had qualified under the restored government of Virginia or under the government of West Virginia. There is a proviso to said section of said act, but I do not deem it material to notice it here. I have already ascertained and determined in effect, that the provisions of said section applicable to an executor and administrator, was the law before the passage of said section of said act, and it is, therefore, unnecessary to inquire or consider for the purposes of this case, whether said section, so far

as I have referred to it as bearing upon this case, is constitutional or not. The said section, however, or so much thereof as I have substantially quoted, only seeks to legalize such acts of executors, &c., who qualified in Virginia, as they might have lawfully done if they had qualified as such in this state. For reasons hereinbefore given, it seems to me that the court did not err in refusing to give to the jury the first and third instructions prayed by the plaintiffs' counsel.

The action of the court, however, in refusing to give to the jury the second instruction prayed by the plaintiffs' counsel, presents for consideration a very important, as well as interesting question of law, and which is not without difficulty. The sale made by the said Jones to the defendant, as well as the the said deed, was evidently predicated alone upon the power given by the last clause of the said will. That clause confers upon the executor a mere power, and not a power coupled with an interest. The legal title to the lands did not, by virtue of said clause, pass to the executor, but it passed otherwise by express devise contained in the will. *Bells, adm'r., v. Humphrey,* 8, W. Va. R. 1, 5, 15, 16, 17, and authorities there cited. Powell in the 1 vol., 3 ed., of his work on devises, says, " A naked authority is when a man devises that his executors shall sell his lands ; or orders that his lands shall be sold by his executors ; or appoints constitutes and empowers A and B, whom he makes his executors of his last will, to *sell, let,* or *set to sale,* his estate." Perry, in his work on trusts, vol. 1, 2 ed., §308, says, " A mere *charge* of debts and legacies on real estate will not vest the estate in the trustees, unless there is some direction to them to raise the money and pay them, or unless there is some other implication that they are to exercise an *active trust* for the purpose. * * If a testator give his trustees a simple power of disposing of his estates, or that his executors or trustees, or other persons, shall sell or let to mortgage, or otherwise dispose of his estate to pay his debts or legacies or annuities, or other

1877.
January Term.

Smith *et al.*
v.
Henning.

charges, or when he directs his executors to raise money, no estate vests in the trustees, executors or other persons but it descends to the heir, or the person to whom it is directed to go in the will, until it is wanted for the purposes named, and then it is divested only to the extent necessary for the purposes named." The purposes of the the testator in giving a power by his will to sell real estate, must be ascertained from all the provisions of the will; and the objects of the power must be considered in connection with the power itself. *Bell's adm'r v. Humphrey* 8, W. Va. 24. *Sharpston v. Tillon* 3, Caines (N. Y.) 651. *In lessee of Nabum Ward v. Jacob Barrons*, 2 Ohio St. R., 241, it was held that a power given by will to sell and convey land, becomes legally inoperative and ceases to exist when the estate is settled or all claims against it are presumptively satisfied by lapse of time, and no object of the testator remains to be attained. Judge Ranney, in delivering the opinion of the court in this case, says, at page 251: "In the construction of these powers, as well as in all other provisions of the will, the intent of the testator is to be regarded, and whenever it appears that the object for which the power is given has been accomplished, or has become impossible, the power itself ceases to exist." See, also, *Jackson v. Janson*, 6 John. R. (N. Y.), p. 72. From a careful examination and consideration of the said will of William Smith, deceased, it is manifest to my mind that the purpose and intent of the testator in giving a power to his executor to sell any of his real estate, was for the payment of his debts, if necessary, and for that purpose only. It is true, there is a power conferred upon said Jones, as the trustee of Mrs. Duffy, to sell her proportion of the testator's real estate, if she desire it, &c. But there is no pretense of argument that the sale and deed made by the executor was made under the power to sell Mrs. Duffy's proportion of the land devised to the trustee for her use. There is nothing in the record to show that Mrs. Duffy ever desired or requested the sale

of her portion of the lands, or that the sale was made by Jones, as trustee for Mrs. Duffy; and, in fact, Mrs. Duffy, or her trustee in her right, for her use, was only entitled to an undivided part of the land sold by the executor to the defendant. The simple power conferred upon the executor by the last clause of the will, to sell any of the lands of the testator, was for the purpose of paying debts of the testator, I think is as clear, from reading and considering the whole will, as if that purpose had been expressly stated in the will. On the death of the testator, the personal estate vests in the executor, who qualifies. In the sale of chattels by an executor, the purchaser need not inquire into the necessity of a sale; and Perry, in his work on Trusts, 2d ed., in paragraph 809, 2d vol., says: "Even express notice of the entire contents of a will cannot affect the purchaser of a chattel; for a purchaser of real estate, under a power of sale to pay debts, is not bound to investigate whether there are debts, nor to see to the application of the purchase money. Thus an executor can sell the personal assets of his testator, and even chattels specifically devised; and the purchaser has no concern with the purchase money." But in paragraph 810, he adds: "while this is the general rule, executors and purchasers cannot collude and commit frauds, for fraud and collusion vitiate every transaction; therefore, if there is fraud, a purchaser cannot protect himself under the absolute power of the executor to sell. Thus the sale of a chattel cannot stand, if it is sold for a nominal price only, or at a fraudulent under value, or for any collusive purpose; or if the purchaser receives the chattel in payment of the executor's own debt to him; or if the purchaser knows that the executor intends to misapply the money, and the sale is made for that purpose. Nor can a purchaser buy from an executor a chattel specifically bequeathed, if he has notice or knowledge that all the debts have been paid, and that such chattel is not required for the payment of debts," &c., §795, 217, 1 vol. P. on Trusts. In paragraph 224,

1 vol. of same work, it is said : " Executors can deal with real estate only, as they are empowered to do so by the will of testators. Purchasers must, therefore, look to the will for the power of the executor. If they purchase in good faith from an executor with power to sell, they will take a good title ; but if they make a fraudulent or collusive purchase from an executor with full power to sell, they still hold the estate upon the same trusts to which it was subject in the hands of the executor," &c. In all sales of executors and administrators, *good faith* is indispensible. If, therefore, a purchaser knows, or has notice, that a sale by an administrator is fraudulent or collusive, or is a *devastavit,* or is for the purpose of a misapplication of the assetts, his title will not be allowed to prevail against the beneficial interest of creditors, specific or residuary legatees, or next of kin or heirs. Same work, vol. 2, ed. 2, paragraph 225, and note 1 ; 2 Story's Eq. Juris., §1131a. At paragraph 395; 1 Story's Eq. Juris., page 381, it is said, " another class of constructive frauds consists of those where a person purchases with full notice of the legal or equitable title of other persons to the same property. In such cases he will not be permitted to protect himself against such claims ; but his own title will be postponed and made subservient to theirs. It would be gross injustice to allow him to defeat the just rights of others by his own iniquitious bargain. He becomes by such conduct *particeps criminis* with the fraudulent grantor; and the rule in equity, as well as of law, is, *dolus et fraus nomini patrocinari debent.* In the case of *Garnett, etc. v. Macon et al.,* 6 Call's R. 308, Judge Marshall says at p. 362 and 363, " But if the sale (speaking of chattels) be a breach of trust, and the purchaser have notice of the fact, he is affected by it. If the executor sells to a person who knows there are no debts, or that all the debts are paid, and that the sale is not a fair execution of the trust, the purchaser may take the property subject to the trust (2 p. Wims. 148, 150). So, too, if the executor sells at such

under value as to indicate fraud, or for payments of his own debt (*Crane v. Drake et al.* 2 Vern. 616 ed. Raithby; *Scott v. Tyler*, 2 Bro. C. C. 433, 477; *Andrew v. Wrigley*, 4 Bro. C. 125, 130; *Hill v. Simpson*, 7 Ves. jun. 152, 167; *Lowther v. Ld. Lowther*, 13 Ves. jun. 95; *McLeod v. Drummond*, 17 Ves. jun. 169). These cases proceed upon the principle that the executor does not sell in pursuance of his trust, but in violation of it; and that the purchaser, knowing this fact, aids him in its execution by making the contract. The purchaser is not bound to make any inquiry. The general power of the executor to sell, protects him in buying; but if he buys with notice that the sale is a breach of trust, the property remains charged with it. I feel much difficulty in resisting the application of this principle to freehold estates, charged with the payment of debts, it seems to me that the inquiry must always be into the fact. The question must alwaws be, is the sale, taking its object into view, a breach of trust? And are the circumstances such as to charge a purchaser having express notice, with a participation in the breach? The purchaser of a chattel, from an executor, with notice that no debts are due, or in payment of his own, seems to me to present the same questions." *Eland v. Eland,* 16 Eng, Chan. R., top pages 425, 426 and side pages 426, 427, by Mylne & Craig; opinion of Judge Green in *Dodson, etc. v. Simpson, etc.* 2 Rand. 294; *Graff et al. v. Castleman and McCormick,* 5 Rand. 195.

The case of *Lake v. Marshall,* &c., reported in 5 J. J. Marshall's (Kentucky) R., 353, was an action at law. The action was detinue for the recovery of slaves sold by the executrix. In that case, Chief Justice Robertson, in delivering the opinion of the court says, at p. 356, "As the will gave to Mrs. Marshall no power to sell any of the property, except for the payment of the testators debts or for the completion of his house, it necessarily follows, that her bill of sale, of two of the slaves to the appellant, vested in him no title after her death, if she

81

made it for any other purpose and if he knew the fact.    As she had a qualified power to sell, he could not be affected by an abuse of that power, if he purchased the slaves in good faith.    But if he knew that she made the bill of sale to him for an unauthorized purpose, the law would consider him as a participant in a fraud on the devisees in remainder, and he could not, therefore, be benefited by the colorable sale to him."    As before stated, it seems to me that the great object of the power to sell in the last clause of the will of said William Smith, deceased, was to provide for the payment of his debts as far as necessary, and if it was not necessary to exercise the power for that purpose, the intention is plain that it was not to be exercise at all.    It was granted upon condition necessarily implied, that it should be exercised if necessary, for the purpose of paying debts and for no other purpose.    The power conferred was plainly intended to be a qualified power.    And if the executor exercised said power of sale for any other purpose than for the payment of debts of the testator, he exceeded the power and authority conferred by said will, and if the purchaser at the sale of the executor had notice or knowledge of such purpose then his purchase and deed from the executor under such circumstances can not afford him protection against the legal rights of the devisees of the land in controversy conferred upon them by the said will, either at law or in equity.    The conduct of the executor and purchaser in such case is at least a construstive fraud upon and against the devisees of the land, who did not consent to or ratify the sale in such manner as to legally bind or estop them from asserting their rights under said will as devisees of the land in controtroversy.    A sale and a deed by the executor, under such circumstances, does not divest the legal title of the devisees under the will, to the land, *Underwood v. Mc-Veigh*, 23 Gratt., 409.    Opinion of Judge Christian, who delivered the opinion of the court in that case.    " It may be observed," says Judge Lomax, in his work on

Executors, vol. 1, 2d ed., p. 589, "that the right of an executor to sell land can only be derived under a special authority; whereas, the executor, by law, has a right to the possession of slaves and personal estate. Therefore, a purchaser of land from an executor is bound to look for and understand the extent of the authority, and consequently the principle, *caveat emptor*, strictly applies in such a case." "Courts of equity and courts of law have, in general, concurrent jurisdiction to suppress and relieve against fraud, but there are many courses of conduct which a court of equity construes to be fraudulent, which cannot be taken notice of by a court of law, though it is not easy to define the distinction between that which a court of equity treats as a fraud, and that which is considered fraud at law." Kerr on Fraud and Mistake, notes of Bump., pp. 44, 45: There is a fraud upon a power, not only where it is exercised in favor of persons who are not the proper objects of the power, but also where it is exercised for purposes foreign to those for which the power was created. The donee of the power shall, at the time of the exercise of the power, and for any purpose for which it is used, act with good faith and sincerity, and with an entire and single view to the real purpose and object of the power, and not for the purpose of accomplishing or carrying into effect any object which is beyond the purpose and intent of the power.

The said second instruction prayed by the plaintiffs, and refused by the court, is not as well prepared as it might have been, but I think for the reasons hereinbefore stated, that it substatially declares the law, and that it was relevant to the case as presented, and that the court erred in refusing to give said second instruction so prayed by the plaintiffs. It further appears that, after the jury returned their verdict in favor of the defendant, the plintiffs moved the court to set the verdict aside and grant them a new trial, because the court admitted improper evidence and refused to give either of the instructions asked for by the plaintiffs, which motion the court overruled.

For the reasons hereinbefore stated, it seems to me, that there is error in the final judgment of the circuit court of the said county of Greenbrier, rendered in this cause on the 17th day of June, 1875, in not giving to the jury the second instruction prayed by the plaintiffs, and said judgment must, therefore, be reversed with costs to the plaintiffs in error against the defendant in error. And this Court proceeding to render such judgment as the said circuit court ought to have rendered, it is considered that the verdict of the jury rendered in this cause be set aside and a new trial of the cause be granted, the costs of the former trial to abide the event of the suit. And this cause is remanded to the said circuit court of the county of Greenbrier for such further proceedings there and thereon to be had as may be according to law.

JUDGMENT REVERSED and case remanded.